IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE RICHARD HOOPER, | No. C 04-1091 CW |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COUNTY OF CONTRA COSTA; WARREN E. RUPF, Contra Costa County Sheriff; RALPH BROWN, Contra Costa County Deputy Sheriff; JOSHUA PATZER, Contra Costa County Deputy Sheriff; and DOES 1-10; | |
| Defendants. | |

Defendants Ralph Brown and Joshua Patzer move, pursuant to Federal Rule of Civil Procedure 56, for summary adjudication of all claims in the third amended complaint (TAC) filed by Plaintiff George Richard Hooper. Plaintiff opposes the motion. The matter was taken under submission on the papers. Having considered the parties' papers and the evidence cited therein, the Court GRANTS in part Defendants' motion for summary judgment and DENIES it in part.

BACKGROUND

According to Plaintiff's sworn declaration, on the evening of March 19, 2003, he ingested approximately one hundred tablets of pain pills and drank several beers in an attempt to commit suicide.

1 At about 12:45 a.m. the next morning, Defendants Brown and Patzer,
2 who are Contra Costa County Sheriff's Deputies, were dispatched to
3 an area of Rutherford Lane in Oakley, California due to a report of
4 a suspicious dark-colored Volkswagon Beetle and its occupant, who
5 was apparently attempting to commit suicide by inhaling exhaust
6 fumes.

7 Brown reached the Volkswagon first, and he states that when he
8 arrived in his marked patrol car, Plaintiff was standing at the
9 rear of the vehicle holding a large tube that was attached to the
10 tailpipe.  Plaintiff acknowledges that he had taken vacuum cleaner
11 hoses from his house and was attempting to connect them to the
12 car's tailpipe.  When Brown arrived at the scene, he turned on his
13 overhead lights, shined a spotlight on Plaintiff, got out of his
14 patrol car, and told Plaintiff to stop what he was doing because he
15 wanted to talk to him.  Brown was in uniform.  The parties agree
16 that, at that point, Plaintiff got into his vehicle and fled.  In
17 his declaration, Plaintiff states that, due to his intoxicated
18 state, he did not realize that Brown was a police officer.

19 Brown states in his declaration that, at the time Plaintiff
20 fled, "I pursued Hooper in my car, and at that time I decided that
21 I needed to detain and arrest him."  Brown does not state for what
22 crime he believed he had probable cause to arrest Plaintiff at that
23 time.  Brown followed Plaintiff westbound on Rutherford Lane with
24 his overhead lights still on.  Patzer approached driving eastbound
25 on Rutherford Lane.  He was also in a marked patrol car and in
26 uniform.  Plaintiff's sworn declaration states as follows: "As I
27 proceeded on what I now know was Rutherford Drive, I encountered a
28

2

car coming toward me in my lane of traffic. I swerved into the other side of the street to avoid colliding with that car."[1]

Plaintiff's vehicle then struck a parked van and came to rest on a curb and sidewalk. Brown and Patzer stopped their vehicles on each side of Plaintiff's car in order to block his escape, and exited their patrol cars with their guns drawn. According to the undisputed evidence submitted by Defendants, Brown approached the driver's side of Plaintiff's vehicle and repeatedly ordered Plaintiff to get out of the car. Patzer positioned himself toward the front of Plaintiff's car. Plaintiff states that he could not hear the officers' commands because the drugs and alcohol had caused him to have difficulty hearing. He also states that, at this point, he still did not realize that Brown and Patzer were police officers.

Defendants submit undisputed evidence that, while the officers were commanding Plaintiff to exit his vehicle, Plaintiff began to rev his engine, and turned his vehicle sharply to the right to dislodge it from the curb and maneuver out from between the two police cars. It is also not disputed that, as Plaintiff executed this maneuver, he almost struck Patzer, who, as he dodged the Volkswagon, fired a single shot into the vehicle, missing Plaintiff. In his sworn declaration, Patzer states that he fired the shot at Plaintiff's vehicle because he believed that Plaintiff was attempting to run him over. Plaintiff states that he did not

---

[1] Defendants submit evidence that Plaintiff swerved his vehicle into the eastbound lane, causing Patzer to drive into the westbound lane to avoid colliding with Plaintiff.

3

1  intentionally drive at Patzer.
2      Plaintiff then drove his car eastbound on Rutherford Lane.  He
3  crashed into a curb several blocks away, which deployed the air
4  bags in his vehicle.  Patzer arrived at the scene and parked his
5  patrol car approximately ten feet behind Plaintiff.  It is not
6  disputed that Plaintiff backed his vehicle into Patzer's vehicle,
7  striking it, and then rolled forward and came to a stop against the
8  curb.  Brown arrived and parked next to Patzer; both officers
9  exited their vehicles and approached Plaintiff's car with their
10 guns drawn.  Plaintiff was grasping the steering wheel with both
11 hands.  According to Patzer's declaration, he told Plaintiff not to
12 move or he would shoot, and Plaintiff responded, "Good, shoot me."
13 Plaintiff does not dispute this.
14     Patzer opened the driver's side door.  Both officers ordered
15 Plaintiff to get out of the car, but he refused.  The evidence is
16 not disputed that the officers then struck Plaintiff several times
17 in an effort to dislodge his grip on the steering wheel and remove
18 him from his car; Patzer struck Plaintiff on the arm once with his
19 baton, and several more times in the face and shoulders with his
20 fists.  Patzer then dragged Plaintiff out of the vehicle and put
21 him face down on the street.  Plaintiff states that he was not
22 resisting at this point, but he does not dispute Defendants'
23 evidence that his arms were underneath his body and not restrained.
24 Patzer acknowledges punching Plaintiff once in the ribs as he tried
25 to get his arms behind him in order to handcuff him.  In
26 Plaintiff's sworn declaration, he states that Patzer kicked him in
27 the face.  It is not clear from Plaintiff's declaration whether he

4

claims that Patzer kicked him while he was handcuffing him, or afterwards. After the officers handcuffed Plaintiff, they placed him in the back of a patrol car.

A paramedic on the scene found abrasions to Plaintiff's face. The emergency room physician at Sutter Delta Hospital, where Plaintiff was taken after the incident, also noted abrasions to his face. No other injuries were reported. On October 21, 2003, Plaintiff entered a plea of nolo contendere to violating California Penal Code section 69 (felony resisting arrest).

On March 18, 2004, Plaintiff filed the complaint that initiated this lawsuit. On April 9, 2004, Plaintiff filed an amended complaint against Brown, Patzer, Contra Costa County, and Contra Costa County Sheriff Warren E. Rupf. On May 10, 2004, Defendants Contra Costa County and Sheriff Rupf moved to dismiss the claims against them. On June 21, 2004, the Court granted the motion to dismiss in part and granted Plaintiff leave to amend his complaint. On July 16, 2004, Plaintiff filed his second amended complaint and, on July 22, he filed the TAC. On August 3, Defendants Contra Costa County and Sheriff Rupf again moved to dismiss the claims against them. Plaintiff did not oppose that motion and, on November 3, 2004, the Court granted it.

The TAC alleges the following causes of action against Brown and Patzer, all of which arise from the officers' pursuit and arrest of Plaintiff: (1) excessive force in violation of the Fourth Amendment, (2) assault and battery, (3) intentional infliction of emotional distress, (4) violation of the Bane Act, a State law which provides civil penalties for interference with protected

5

rights accompanied by discriminatory intent, and common law causes of action for (5) failure to intervene, and (6) negligence.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by

6

demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

DISCUSSION

I.  Excessive Force

   A.  Heck v. Humphrey

Defendants contend that Plaintiff's excessive force claim is barred pursuant to Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court ruled that a plaintiff may not recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless he or she can prove that the conviction or sentence has been overturned, expunged or declared invalid. 512 U.S. at 486-87. The test is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [the plaintiff's] conviction or sentence." Id. at 487.

7

Here, Defendants argue that a judgment in favor of Plaintiff on his excessive force claim would invalidate his plea of nolo contendere to the charge of felony resisting arrest. A plea of nolo contendere has the same effect as a guilty plea or guilty verdict for purposes of Heck analysis. See Nuno v. County of San Bernardino, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999).

Plaintiff cites Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005), in which the Ninth Circuit held, "In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying or obstructing a peace officer." The court ruled that, if an officer used excessive force at the time of an arrest, the arrest would be unlawful and the arrestee could not be convicted of resisting. Id. at 695-96. However, the Smith court ruled that the defendants in that case were not entitled to summary judgment under Heck because it was not clear from the record whether Smith had plead guilty to resisting, delaying or obstructing the officer based upon his actions during his arrest (which would have triggered Heck), or based upon his actions prior to his arrest when officers were attempting to conduct an investigation at Smith's house and had not yet attempted to detain him. Id. at 697-98.

Plaintiff argues that Heck does not bar his excessive force claim because Brown and Patzer used excessive force both before and after they arrested him. Plaintiff contends that the officers' actions during the initial car chase on Rutherford Lane occurred before Plaintiff's arrest, and that their actions while he was face down on the street occurred after his arrest.

8

Here, the evidence is not clear at what point Defendants had probable cause to arrest Plaintiff. Brown states that he decided to arrest Plaintiff when Plaintiff drove away from the initial encounter with him, but Defendants have not specified the crime for which Brown had probable cause to arrest Plaintiff at that time. Brown does not state that he was attempting to detain Plaintiff pursuant to California Welfare and Institutions Code section 5150 before Plaintiff fled in his vehicle. Defendants' declarations state that they had probable cause to arrest Plaintiff for resisting arrest and various vehicle code violations, but it appears that this had not occurred when Plaintiff first drove away from Brown. Thus, there is no evidence that Defendants had initiated a lawful arrest when Plaintiff initially fled, and there is a genuine factual dispute whether Defendants' actions during the initial car chase occurred during the course of their arrest of Plaintiff. It is during this time that, according to Plaintiff, Patzer drove his car in the wrong lane toward him, an action that Plaintiff asserts constituted deadly and excessive force.

In addition, Plaintiff's declaration states that Patzer kicked him the face at some point after Defendants dragged him from his vehicle and threw him on the ground, and after he had been physically restrained and was not resisting. It is not clear from Plaintiff's declaration whether he claims that Patzer kicked him after he was handcuffed. However, drawing all inferences in favor of Plaintiff, there is a material dispute whether, if he was kicked in the face, he was kicked after Defendants had effectuated his arrest.

9

For the foregoing reasons, there is a genuine factual dispute whether the actions of which Plaintiff complains -- Patzer's driving on the wrong side of the road toward him and Patzer's kicking him in the face -- occurred entirely during his arrest, or whether they occurred before or after his arrest, respectively. If these actions occurred before or after his arrest, Plaintiff's excessive force claim arising from them is not barred under Heck by his nolo contendere plea. See Smith, 394 F.3d at 697-98. Plaintiff has not submitted evidence that Brown committed any act that may form the basis for an excessive force claim that is not Heck-barred. Thus, Defendants' motion for summary adjudication of Plaintiff's excessive force claim is denied with respect to Patzer and granted with respect to Brown.

B.   Qualified Immunity

Defendants also argue that they are entitled to summary judgment of qualified immunity from Plaintiff's excessive force claim. The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question is whether, taken in the light most favorable to the plaintiff, the facts alleged show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). The plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate

10

Bank, 953 F.2d 520, 523 (9th Cir. 1992).  If the law is determined to be clearly established, the next inquiry is whether a reasonable official <u>could have</u> believed his conduct was lawful.  Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).

Excessive force claims arising in the context of an arrest or investigatory stop are analyzed under the Fourth Amendment reasonableness standard.  Graham v. Connor, 490 U.S. 386, 395 (1989).  The reasonableness of a particular use of force is judged from the perspective of the officer; that analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 396-97.

Resolving factual disputes in favor of Plaintiff and crediting his evidence, there was no probable cause to arrest him when he drove away from the initial encounter with Brown, and his arrest had been completed when he was restrained on the ground and handcuffed.  Plaintiff had a clearly established right to be free from excessive force in both situations, which occurred before and after his arrest, respectively.  And, under these circumstances, no reasonable officer could have believed that driving his patrol car the wrong way down the street directly at Plaintiff was reasonable, nor could he have believed that kicking him in the face after he had been arrested was permissible.

For the foregoing reasons, Patzer is not entitled to summary judgment of qualified immunity from Plaintiff's excessive force claim.

11

1 II.  State Law Claims
2     A.   Assault and Battery
3     Defendants argue that Plaintiff cannot establish a cause of
4 action for assault and battery because he cannot prove that
5 unreasonable force was used.  In California, in order to make a
6 prima facie case of assault against a police officer, a plaintiff
7 must demonstrate that the officer's use of force was unreasonable
8 in addition to the elements of a general assault claim.  Scruggs v.
9 Haynes, 252 Cal. App. 2d 256, 264 (1967).  A claim for assault
10 requires a showing of an unlawful attempt, coupled with present
11 ability, to commit violent injury on the person of another.  Eres
12 v. County of Alameda, 1999 WL 66519, *11 (N.D. Cal. 1999).
13     For the reasons stated above, there is a genuine dispute of
14 material fact whether Patzer used excessive force during the March
15 20, 2003 incident.  However, Plaintiff may not bring a State law
16 tort claim based upon an excessive force claim that is Heck-barred.
17 Susag v. City of Lake Forrest, 94 Cal. App. 4th 1401, 1412-13
18 (2002).  Accordingly, Defendants' motion for summary adjudication
19 of this claim is denied with respect to Patzer and granted with
20 respect to Brown.
21     B.   Intentional Infliction of Emotional Distress
22     Defendants argue that Plaintiff cannot sustain a claim for
23 intentional infliction of emotional distress because he has not
24 submitted evidence that Defendants' behavior was outrageous or that
25 he suffered severe emotional distress as a result of that behavior.
26 Under California law, a plaintiff must establish the following
27 elements to prevail on a claim for intentional infliction of
28

12

emotional distress: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard of the possibility of causing, emotional distress; (2) severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress. Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593 (1979).

Here, because there is a triable issue of fact whether Patzer drove his car on the wrong side of the road toward Plaintiff before a legal arrest was initiated, and whether Patzer kicked Plaintiff in the face after his arrest was completed, there is also a genuine dispute whether Patzer's conduct was extreme and outrageous. In addition, Plaintiff states in his declaration that he has suffered emotional distress as a result of the March 20, 2003 incident. Thus, summary adjudication of this claim against Patzer is not appropriate. Defendants' motion for summary adjudication of this claim against Brown is granted. See Susag, 94 Cal. App. 4th at 1412-13.

C.  Bane Act

Plaintiff's Bane Act claim is based upon his claim of excessive force. Thus, Defendants' argument that Plaintiff's Bane Act claim fails because his excessive force claim fails must be rejected. However, under the Bane Act, a plaintiff must show interference with a protected right and that the interference was "due to his or her race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute." Boccato v. City of Hermosa Beach, 29 Cal. App. 4th 1797, 1809 (1994) (internal

13

citations omitted).

Here, Plaintiff has submitted no evidence that Defendants' conduct was accompanied by discriminatory intent. And, Plaintiff has submitted no evidence that he is a member of a class of persons protected by California Civil Code section 51.7, which is a requirement to bring a claim under the Bane Act. Id. Thus, Defendants' motion for summary adjudication of Plaintiff's Bane Act claim is granted.

### D. Failure to Intervene

The TAC states a common law cause of action for failure to intervene, alleging that police officers other than Defendants had a duty to intervene in Defendants' alleged constitutional violations. Police officers have a duty to intercede if their fellow officers violate the constitutional rights of a suspect, and the witnessing officers have an opportunity to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

Plaintiff has not argued or submitted evidence that Brown had an opportunity to intervene when, as Plaintiff claims, Patzer drove at him on the wrong side of the road and kicked him once in the face. Thus, Defendants are entitled to summary adjudication of this claim.

### E. Negligence

Plaintiff's sixth cause of action is for negligence. Defendants argue that Plaintiff's negligence claim must fail because his section 1983 claim fails. However, the Court has denied Defendants' motion for summary adjudication of Plaintiff's claim against Patzer for excessive force.

14

In order to prevail on his claim for common law negligence, Plaintiff must show that (1) Defendants owed Plaintiff a duty of care, (2) Defendants breached that duty, (3) the breach caused Plaintiff's injury, and (4) Plaintiff suffered damages. See Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 213 (2003). For the reasons stated above, there is a triable issue of fact on each of these elements with respect to Patzer. Defendants' motion for summary adjudication of this claim against Patzer is denied. Their motion for summary adjudication of this claim against Brown is granted. See Susag, 94 Cal. App. 4th at 1412-13.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 47) is GRANTED in part and DENIED in part. The Court grants Defendants' motion for summary adjudication of all claims against Brown. The Court also grants Defendants' motion for summary adjudication of Plaintiff's claims, against Patzer, under the Bane Act and for failure to intervene. The Court denies Defendants' motion for summary adjudication of the remaining claims against Patzer.

IT IS SO ORDERED.

Dated: 10/14/05

CLAUDIA WILKEN
United States District Judge